UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PAUL DANIEL, MARGIE DANIEL        No. 2:11-cv-02652-MCE-EFB

      Plaintiffs,

  v.                                MEMORANDUM AND ORDER

WELLS FARGO BANK, N.A.,
et al.,

      Defendants.

----oo0oo----

    Before the Court are Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") (ECF No. 5), Defendants' Motion to Strike Portions of Plaintiffs' FAC (ECF No. 6) and Request for Judicial Notice ("RJN") (ECF No. 7).

///
///
///
///
///
///

1

1   Also before the Court are Plaintiffs' Motions for: (1) Remand

2   (ECF No. 9); (2) Untimely Filing of Opposition to Motion to

3   Dismiss (ECF No. 13); (3) Issuance of Temporary Restraining Order

4   ("TRO") and Preliminary Injunction ("PI") (ECF No. 20); and (4)

5   Setting of Expedited Hearing on the Motion for TRO/PI (ECF No.

6   25).[1]  For the reasons that follow, Defendants' Motion to Dismiss

7   (ECF No. 5) and Request for Judicial Notice (ECF No. 7) are

8   GRANTED and Defendants' Motion to Strike (ECF No. 6) is DENIED as

9   MOOT.  Plaintiffs' Motion for Remand (ECF No. 9) is DENIED,

10  Plaintiffs' Motion for Untimely Filing of Opposition to Motion to

11  Dismiss (ECF No. 13) is GRANTED, and Plaintiffs' Motions for

12  TRO/PI and an expedited hearing on same (ECF Nos. 20 and 25) are

13  DENIED as MOOT.

14

15                          **BACKGROUND**[2]

16

17      In the spring of 2007, Plaintiffs Paul Daniel and Margie

18  Daniel refinanced their home located at 7821 Killdeer Way,

19  Elk Grove, California, and entered into an Option Adjustable Rate

20  ///

21  ///

22  ///

23  ///

24  ───────────────

25      [1] Because oral argument would not be of material assistance,
    the Court orders these matters submitted on the briefs.  E.D.

26  Cal. Local Rule 78-230(h).

27      [2] To the extent possible, the following facts are taken from
    Plaintiffs' FAC (ECF No. 1.)  For the purposes of this Motion,

28  the Court accepts Plaintiffs' facts as true and makes all
    inferences in the light most favorable to Plaintiffs.

Mortgage ("ARM") with World Savings Bank, which later became Wells Fargo Bank, N.A. ("Wells Fargo").[3]   (FAC, ECF No. 1, at 7, Ex. A.)

Plaintiffs' FAC does not indicate what exactly happened following the refinancing, but Defendants state that Plaintiffs' original complaint was filed in state court in April of 2010 (although Defendants state they were not served with the FAC until September of 2011).   (MTD, ECF No. 5 at 10; Notice of Removal and FAC, ECF No. 1.)   In addition, Defendants state that Plaintiffs filed a petition for Chapter 7 bankruptcy in December 2010, and that this petition was discharged on May 17, 2011. (ECF No. 5 at 9, ECF No. 7, Exs. I and J (Voluntary Petition and Discharge of Debtor).)   Defendants removed to this Court on October 7, 2011, on the basis of federal question jurisdiction.

Plaintiffs generally allege that the Option ARM is a deceptively devised financial product, which had higher interest rates than promised, and which was designed to, and did in fact, cause negative amortization of their loan to occur.[4]   (FAC at 8-9.)   Plaintiffs raise five claims for relief: (1) violations of the Truth in Lending Act, 15 U.S.C., §§ 1601, et seq. ("TILA"); (2) fraudulent omissions; (3) violation of California's Unfair Competition Law, Business and Profession Code §§ 17200, et seq. ("UCL"); (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing.

---

[3] In 2008, Plaintiffs again refinanced the property into an ARM with Wells Fargo.   (ECF No. 7, Ex. C.)

[4] Negative amortization refers to the situation where a loan payment for a particular period is less than the interest charged for that period, so the balance owed on the loan increases over time.

1    On October 14, 2011, Defendants filed their MTD.  (ECF
2   No. 5.)  Defendants' move to dismiss, under Fed. R. Civ. P.
3   12(b)(6),[5] on the basis that Plaintiffs': (1) claims are barred
4   by judicial estoppel; (2) state law claims against Wachovia are
5   barred by the Home Owner's Loan Act, 12 U.S.C. §§ 1461, et seq.
6   ("HOLA"); (3) TILA claims are time-barred and Plaintiffs never
7   tendered their indebtedness; (4) fraudulent omission claim fails
8   to satisfy the elements for such a claim; (5) have failed to
9   state a claim for unfair business practices under the UCL;
10   (6) failed to allege a breach of the note or deed of trust; and
11   (7) failed to state a claim for breach of the implied covenant of
12   good faith and fair dealing.  In addition, Plaintiffs filed a
13   Motion to Strike portions of Plaintiffs' FAC.  (ECF No. 6.)

14    On December 10 and 16, 2011, Plaintiff Paul Daniel filed a
15   request, which the Court interprets as a Motion to Remand (see
16   ECF Nos. 9 and 10), generally asking the Court to send the case
17   back to state court due to Mr. Daniel's deteriorating health.
18   While the Court is sympathetic to Mr. Daniel's health issues,
19   they are not a basis for remand, and Defendants properly removed
20   this case on the basis of federal question jurisdiction.
21   Therefore, the motion is denied.

22    On March 28, 2012, Plaintiffs filed their Motion seeking
23   leave to untimely file their Opposition, which attached their
24   proposed Opposition.  (ECF No. 13.)

25   ///

26   ///

27

28      [5] All further references to "Rule" or "Rules" are to the
    Federal Rules of Civil Procedure unless otherwise noted.

4

1   The motion to permit untimely filing of the Opposition is
2   unopposed and will be granted due to the fact that Plaintiffs'
3   prior attorney has been indicted and Plaintiffs have only
4   recently obtained new counsel.  (See ECF No. 13, Exs. A-D.)

5        Thereafter, Plaintiffs filed their Motion for TRO/PI and
6   Motion for Expedited Hearing.  (ECF Nos. 20-25.)  Plaintiffs
7   contend that a TRO/PI is necessary to prevent Defendants from
8   evicting them and because there is an unlawful detainer action
9   proceeding in Sacramento Superior Court.

10
11                              **ANALYSIS**
12

13       Because the Court's denial of Plaintiffs' Motion for a
14  TRO/PI relates to the merits of their claims, the Court will
15  first address Defendants' MTD.  (ECF Nos. 5.)  Because the Court
16  concludes that the MTD should be granted, the MTS, (ECF No. 6),
17  is denied as moot.

18
19  **I.   MOTION TO DISMISS**
20
21       **A.   Standard**
22

23       On a motion to dismiss for failure to state a claim under
24  Rule 12(b)(6), all allegations of material fact must be accepted
25  as true and construed in the light most favorable to the
26  nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,
27  337-38 (9th Cir. 1996).
28  ///

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and quotations omitted).  Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted).  A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal citations omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009). ///

6

If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")(internal citations omitted).  While leave to amend must be freely given, the court is not required to allow futile amendments.  Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983).

**B.  Analysis**

Defendants generally argue this action may be dismissed on the basis of: (1) judicial estoppel; (2) HOLA; and (3) failure to state a claim on each of Plaintiffs' causes of action.

///

1  Each will be addressed before the Court discusses Plaintiffs'
2  Motion for TRO/PI.

3

4       **1.   Judicial Estoppel**

5

6            **(a)   Parties' Contentions**

7

8       Defendants first contend that Plaintiffs' claims are barred
9  under the doctrine of judicial estoppel because Plaintiffs failed
10 to raise any of these claims in their bankruptcy proceeding and
11 they should be estopped from raising them after the discharge of
12 their bankruptcy.  (MTD, ECF No. 5 at 2-4.)  Specifically,
13 Defendants argue that Plaintiffs' claims all arise from either
14 the origination of their loan, or from its subsequent
15 refinancing, all of which occurred before Plaintiffs filed for
16 bankruptcy.  (Id. at 2-3.)  Because Plaintiffs failed to assert
17 their claims in the bankruptcy proceeding, Defendants contend
18 they should be estopped from pursuing their claim in this
19 proceeding.  (Id. at 3.)
20      In their Opposition, Plaintiffs do not contest that the
21 claims should have been first filed in the bankruptcy proceeding.
22 (ECF No. 19 at 2-3.)  Rather, Plaintiffs argue that this action
23 should be held in abeyance while they seek to reopen the
24 bankruptcy action to raise their claims.  Id.
25 ///
26 ///
27 ///
28 ///

1          **(b)   Analysis**

2

3          "In the bankruptcy context, a party is judicially estopped

4    from asserting a cause of action not raised in a reorganization

5    plan or otherwise mentioned in the debtor's schedules or

6    disclosure statements."   Hamilton v. State Farm Fire & Cas. Co.,

7    270 F.3d 778, 783 (9th Cir. 2001) (holding that plaintiff was

8    estopped from suing an insurer subsequent to the discharge of his

9    bankruptcy where he had notice of his claims against the insurer

10   during the pendency of the bankruptcy action).   Further,

11   "[j]udicial estoppel will be imposed when the debtor has

12   knowledge of enough facts to know that a potential cause of

13   action exists during the pendency of the bankruptcy, but fails to

14   amend his schedules or disclosure statements to identify the

15   cause of action as a contingent asset."   Id. at 784.

16         Here, Plaintiffs' claims arise from the loan origination and

17   refinancing, which occurred in 2007-2008, so prior to their

18   bankruptcy action, which was initiated in December of 2010 and

19   discharged in 2011.   In addition, Plaintiffs filed their lawsuit

20   in state court during the pendency of the bankruptcy action.

21   Plaintiffs were therefore on notice of their claims but failed to

22   raise them in the bankruptcy proceedings.   They are therefore

23   estopped from proceeding with this lawsuit on the basis of claims

24   that they failed to raise in their bankruptcy proceeding.   See

25   id. at 783-84.

26         Furthermore, Plaintiffs have not demonstrated good cause for

27   this Court to hold this matter in abeyance while they attempt to

28   reopen the bankruptcy proceedings and raise these claims.

Plaintiffs have not presented any reason why their claims could not have been brought in the Bankruptcy Court in the first instance, and their failure to do so is not a basis for this Court to further delay this action while they seek to reopen the bankruptcy proceeding.

Therefore, Plaintiffs' MTD is granted without leave to amend on the basis that Plaintiffs are judicially estopped from bringing the present action due to their failure to raise their claims in the prior bankruptcy proceeding and any amendment to their FAC would be futile.  However, even if the Court were to consider the substance of Plaintiffs' claims, the Court would still grant the motion to dismiss.

## 2.   State Law Claims Barred by HOLA

### (a)   Parties' Contentions

Defendants contend that Plaintiffs' state law claims are preempted by HOLA.  (ECF No. 5 at 4-8.)  They state that World Savings was a federal savings bank organized and operating under HOLA, and that the alleged misconduct here falls within HOLA, even though World Savings was subsequently acquired by Wachovia Mortgage and Wachovia Mortgage later merged with Wells Fargo. Id. at 4.

Plaintiffs argue that HOLA was not intended to preempt common law fraud claims or otherwise supplant state law and it does not preempt their claims.  (ECF No. 19 at 7-10).
///

1

**(b)  Analysis**

2

3      Federal savings associations, including federal savings

4  banks, are subject to HOLA and are regulated by the Office of

5  Thrift Supervision ("OTS").  12 U.S.C. § 1464; <u>Silvas v. E*Trade</u>

6  <u>Mortg. Corp.</u>, 514 F.3d 1001, 1005 (9th Cir. 2008).  Here, because

7  Plaintiffs' loan originated with World Savings, which was a

8  federal savings bank, their claims are subject to HOLA.  Further,

9  the Court finds that HOLA continues to apply after Wachovia

10  Mortgage acquired World Savings and later merged with Wells

11  Fargo.  <u>See</u>, <u>e.g.</u>, <u>DeLeon v. Wells Fargo Bank, N.A.</u>,

12  729 F. Supp.2d 1119, 1126, (N.D. Cal. 2010) ("Wells Fargo notes

13  that at the time the loan was made to the DeLeons [plaintiffs],

14  World Savings Bank, FSB was a federally chartered savings bank

15  organized and operating under HOLA and observes correctly that

16  the same preemption analysis would apply to any alleged

17  misconduct after November 1, 2009, when the lender merged into a

18  national savings banking association.) (internal quotation mark

19  omitted); <u>Guerrero v. Wells Fargo Bank, N.A.</u>, 2010 U.S. Dist.

20  LEXIS 96261 (C.D. Cal. Sept. 14, 2010) ("Where a national

21  association, such as [Wells Fargo], acquires the loan of a

22  federal savings bank, it is proper to apply preemption under

23  HOLA.").

24      Under HOLA, the OTS enjoys "plenary and exclusive authority

25  ... to regulate all aspects of the operations of Federal savings

26  associations" and its authority "occupies the entire field of

27  lending regulation for federal savings associations."  12 C.F.R.

28  §§ 545.2, 560.2(a).

The Ninth Circuit has stated that the enabling statute and subsequent agency regulations are "so pervasive as to leave no room for state regulatory control." Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1260 (9th Cir. 1979).  Under the regulations promulgated by the OTS, HOLA preempts any state law claim having to do with disclosures and advertising; processing, origination, servicing, sale, or purchase of, or investment or participation in, mortgages; terms of credit; and loan-related fees.  See 12 C.F.R. § 560.2(b)(4), (5), (9), (10).

     Here, Plaintiffs' state law (1) fraudulent omissions, (2) UCL, (3) breach of contract and (4) good faith and fair dealing claims are all barred by HOLA.  Each of Plaintiffs' claims arise out of the origination of the loan and, to a lesser extent, its subsequent servicing.  In essence, the Plaintiffs' FAC alleges that Defendants' Option ARM is a deceptively devised financial product, which had higher interest rates than promised, and which was designed to, and did in fact, cause negative amortization of their loan to occur.  (FAC at 8-9.)  Because the origination and servicing of the loan is subject to HOLA, and because each of Plaintiffs' claims is predicated on the origination and servicing of the loan, each of Plaintiffs' state law claims are preempted.

     Therefore, even if the Court had not already concluded that this action is barred by judicial estoppel, it would still conclude that Defendants' state law claims are preempted by HOLA and dismiss those claims on that basis.  However, even if the Court were to reach the merits of each of Plaintiffs' claims, it would grant Defendants' MTD.

**3.    Failure to State Substantive Claims**

Because the Court has determined that Plaintiffs' state law claims are barred on the basis of judicial estoppel and judicial estoppel and HOLA, and because the Court finds that each of Plaintiffs' substantive claims fails to satisfy the pleading requirements of Rule 8(a), as interpreted by Iqbal and Twombly, its treatment of these claims will be limited.

**(a)   Violations of TILA**

**(i)   Parties' Contentions**

Defendants' argue that Plaintiffs' (1) damages claim is time-barred, and (2) their rescission claim fails because they have failed to tender their indebtedness.  (ECF No. 16-17.) Specifically, Defendants contend that the statute of limitations for a TILA damages claim is within one year from the consumation of the loan, and that Plaintiffs failed to bring this action within one year following the loan origination in 2007.  (Id. (citing 15 U.S.C. §§ 1635(f), 1640(e)).  Further, Defendants contend that a plaintiff seeking rescission under TILA must plead and prove an ability to tender the loan, and that Plaintiffs have not done so here.  Id. at 16.

Plaintiffs contend that equitable tolling saves their damages claim.  They allege that they did not have a reasonable opportunity to discover the fraud/nondisclosure during the one-year statute of limitations period.  (ECF No. 19 at 10-13.)

1  In the alternative, Plaintiffs assert that their claims also fall

2  within the three-year statute of limitations set forth in 15

3  U.S.C. § 1635(f) because they were not given proper notice of

4  their right to rescind their loan agreement.  (Id. at 12, citing

5  FAC, ECF No. 1 at ¶¶ 40-44, 68-73.)  Regarding the rescission

6  claim, Plaintiffs argue that they do not have to tender payment

7  now, but can do so after they prevail on their rescission claim.

8  (Id. at 13-15 (citing Palmer v. Wilson, 502 F.2d 860-61 (9th Cir.

9  1974)).)

10

11                      **(ii) Analysis**

12

13       TILA requires that lenders make certain disclosures to

14  borrowers, which will give rise to a cause of action if the

15  lender violates its disclosure requirements.  See, e.g.,

16  15 U.S.C. §§ 1601-1667f.  Further, TILA mandates that borrowers

17  be given three business days to rescind, without penalty, a

18  consumer loan that uses their principle dwelling as security.

19  § 1635(a).  A TILA claim seeking damages is subject to a one-year

20  statute of limitations.  See 15 U.S.C. § 1640(e) ("Any action

21  under this section may be brought in any United States district

22  court, or in any other court of competent jurisdiction, within

23  one year from the date of the occurrence of the violation....").

24  That limitations period begins to run "on the date of

25  consummation of the transaction."  King v. State of Cal.,

26  784 F.2d 910, 915 (9th Cir. 1986)  If the lender has not complied

27  with TILA's disclosure requirements, the rescission period is

28  extended to three years.

                              14

1  § 1635(f); see also Miguel v. Country Funding Corp., 309 F.3d
2  1161, 1164-65 (9th Cir. 2002) (upholding dismissal of a
3  rescission claim under TILA where the three-year statute of
4  limitations had expired).

5       First, Plaintiffs' TILA claims are insufficient to satisfy
6  the pleading requirements of Rule 8(a).  Plaintiffs do not allege
7  any facts that support their contention that the Defendants
8  failed to satisfy their disclosure requirements.  Rather,
9  Plaintiffs' FAC contains generic conclusory accusations that
10 Defendants failed to comply with their disclosure requirements
11 without providing any facts that would support such a conclusion.
12 (See ECF No. 1, at ¶¶ 9-38, 40-44, 68-73.)  A court is not
13 required to accept as true a "legal conclusion couched as a
14 factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly,
15 550 U.S. at 555).  "Factual allegations must be enough to raise a
16 right to relief above the speculative level." Twombly, 550 U.S.
17 at 555.

18      Second, Plaintiffs' damages claim is barred by the one-year
19 statute of limitations, 15 U.S.C. § 1640(e), and equitable
20 tolling does not apply.  The Court "will apply equitable tolling
21 in situations where, despite all due diligence, the party
22 invoking equitable tolling is unable to obtain vital information
23 bearing on the existence of the claim." Cervantes v. Countrywide
24 Home Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011) (internal
25 quotation marks and alterations omitted).  Plaintiffs' conclusory
26 allegations in that they didn't have the opportunity to learn of
27 the disclosure violations during the statutory period is
28 conclusory.

15

Further, they provide no facts that support the conclusion that any "disclosure" by Defendants was either not made or was faulty. Plaintiffs are therefore not entitled to equitable tolling of the TILA claim.[6]

In addition, Plaintiffs' claim for rescission under TILA fails because they have failed to allege either that they have the ability to tender or offer evidence that they have tendered payment to Defendants.  Under California law, a plaintiff challenging a foreclosure sale or any cause of action "implicitly integrated" with the sale is required to make a valid and viable tender of payment of the debt.  Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578-79 (1984); Karlsen v. Am. Savs. & Loan Ass'n, 15 Cal. App. 3d 112, 121 (1971).  An offer to tender is "an offer to pay the full amount of the debt for which the property was security."  Arnolds Mgmt. Corp., 158 Cal. App. 3d at 578.

In conclusion, Plaintiffs' TILA claim fails because: (1) they failed to sufficiently plead their claim in accordance with Rule 8(a) as interpreted by the United States Supreme Court in Iqbal and Twombly; (2) their claim is time-barred; and (3) it fails because of lack of tender.  Therefore, even if the Court were to reach the merits of Plaintiffs' TILA claim, it would be dismissed.

---

[6] Further, Plaintiffs' contention that the three-year statute of limitations may apply to their damages claim misconstrues the statute: the one-year limitations period applies to damages claims, the three-year period applies to rescission claims.  Cf. 15 U.S.C. §§ 1640, 1640(e) and 15 U.S.C. §§ 1635, 1635(f).

**(b)   Fraudulent Omissions**

**(i)   Parties' Contentions**

Defendants argue that Plaintiffs have failed to sufficiently plead fraud with particularity.  (ECF No. 5 at 17-19.) Specifically, Defendants contend that Plaintiffs' claims that Defendants concealed the actual interest rates and the resulting negative amortization does not specify what Defendants caused what harm, nor does the FAC detail what facts were concealed, when they were concealed, what representations were made, or what duties were owed by the particular parties that either omitted or concealed any facts.  (Id.)

Plaintiffs contend that they sufficiently pleaded fraud with particularity in their FAC, the misrepresentations are written into the loan agreement, and, in any event, they cannot recall exactly who, if anyone, made any misrepresentations.

**(ii)   Analysis**

The elements for a fraud claim are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  In re Estate of Young, 160 Cal. App. 4th 62, 72 (2008).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." ///

17

This includes "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (citation and quotations omitted).

Here, even if Plaintiffs' claims were not barred by judicial estoppel and preempted by HOLA, the Court would still conclude that Plaintiffs have failed to sufficiently plead their fraudulent omission claim under either Rule 8(a) or the higher standard set forth in Rule 9(b).  Plaintiffs' claims are essentially legal conclusions couched as facts.  They lack sufficient detail to provide notice as to what the omissions are and who was responsible for them.

### (c)   Unfair Competition Law

#### (i)   Parties' Contentions

Defendants assert that Plaintiffs have failed to allege sufficient facts to support a UCL claim.  (ECF No. 5 at 19-20.). Plaintiffs contend that the same set of facts that form the basis for their fraudulent omission claims form the basis for their UCL claim.  (ECF No. 19 at 17-18.)

///
///
///
///
///
///

18

1                      **(ii) Analysis**

2

3      California's UCL, Business and Professions Code §§ 17200

4 et seq., defines unfair competition as "any unlawful, unfair or

5 fraudulent business act or practice."  "Unlawful" practices are

6 practices "forbidden by law, be it civil or criminal, federal,

7 state, or municipal, statutory, regulation, or court-made."

8 Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994)

9 (citing People v. McKale, 25 Cal. 3d 626, 632 (1979)).  To state

10 a cause of action based on an "unlawful" business act or practice

11 under the UCL, a plaintiff must allege facts sufficient to show a

12 violation of some underlying law.  McKale, 25 Cal.3d at 635.

13      A business act or practice is "unfair" when the conduct

14 "threatens an incipient violation of an antitrust law, or

15 violates the policy or spirit of one of those laws because its

16 effects are comparable to a violation of the law, or that

17 otherwise significantly threatens or harms competition."

18 Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.,

19 20 Cal. 4th 163, 187 (1999).  To sufficiently plead an action

20 based on an "unfair" business act or practice, a plaintiff must

21 allege facts showing the "unfair" nature of the conduct and that

22 the harm caused by the conduct outweighs any benefits that the

23 conduct may have.  Motors, Inc. v. Times Mirror Co.,

24 102 Cal. App. 3d 735, 740 (1980).

25 ///

26 ///

27 ///

28 ///

A "fraudulent" business act or practice is one in which members of the public are likely to be deceived.  Hall v. Time, Inc., 158 Cal. App. 4th 847, 849 (2008); Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 618 (1996)("does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived'").  Thus, in order to state a cause of action based on a "fraudulent" business act or practice, the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct.  Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 212 (1983).  Furthermore, a plaintiff alleging unfair business practices under § 17200 "must state with reasonable particularity the facts supporting the statutory elements of the violation.  Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993).

In this case, Plaintiffs fail to plead a UCL claim under any available theory.  First, the 'unlawful" prong of the UCL requires an underlying violation of a state or federal statute or common law.  As noted above, the Court is granting Defendants' MTD as to all of Plaintiffs' state and federal claims.  As a result, none of these claims cannot form the basis of Plaintiffs' UCL claim.  In addition, conclusory allegations that Defendants knowingly promised consumers low payments that were insufficient to pay off their loan amounts, as Plaintiffs do here, without more, is not sufficient to maintain a plausible claim, particularly not where the loan documents themselves explicitly warn that the mortgage payments may not be sufficient to pay down the balance.

1  Such conclusory allegations are insufficient to satisfy Rule

2  8(a)'s pleading standard.  See Iqbal, 556 U.S. 662, 678; Twombly,

3  550 U.S. at 555.

4       Next, Plaintiffs do not adequately plead an independent UCL

5  claim for unfair or fraudulent business practices because

6  Plaintiffs fail to allege facts to support any identifiable

7  wrongdoing by any specific Defendants.  Likewise, Plaintiffs'

8  mere conclusory recitation of the elements of these claims do not

9  give proper notice to the respective Defendants as to the alleged

10  misconduct.

11       Accordingly, even if the Court were to reach Plaintiffs' UCL

12  claim, it could not survive Defendants' MTD.

13

14               **(d)   Breach of Contract**

15

16               **(i)   Parties' Contentions**

17

18       Defendants contend that Plaintiffs' argument that monthly

19  payments were not applied to the principal loan balance fails to

20  describe a breach of contract where the contract document

21  explicitly states that the payments may not be sufficient to pay

22  the entire amount of monthly accrued interest.  (ECF No. 5 at

23  20-22.)  Plaintiffs respond that they sufficiently alleged breach

24  by arguing that Defendants failed to apply the interest rate

25  listed in the note.  (ECF No. 19 at 19-21, citing FAC, ECF No. 1

26  at ¶¶ 120-125.)

27  ///

28  ///

1                             **(ii) Analysis**

2

3      Under California law, a claim for breach of contract

4 requires that a plaintiff demonstrate: (1) the existence of the

5 contract; (2) plaintiff's performance or excuse for

6 nonperformance of the contract; (3) defendant's breach of the

7 contract; and (4) resulting damages.  <u>Armstrong Petrol. Corp. v.</u>

8 <u>Tri Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n.6

9 (2004).

10      Here again, the FAC fails to adhere to the pleading standard

11 set forth in Rule 8(a) as interpreted by <u>Iqbal</u> and <u>Twombly</u>.

12 Plaintiffs' claims lack specificity as to how Defendants breached

13 the note beyond the conclusory statements that: (1) Defendants

14 provided Plaintiffs with a payment schedule that was inconsistent

15 with the contract; (2) applied a different interest rate than the

16 one set forth in the note; and (3) failed to apply any of

17 Plaintiffs' monthly payments toward the balance of the loan.  In

18 addition to being conclusory, Plaintiffs have failed to establish

19 how these allegations are inconsistent with the terms of the

20 note, which expressly states that Plaintiffs chose the amount of

21 their monthly payment and that the amount of that payment might

22 not be sufficient to cover accrued interest.  (<u>See</u>, <u>e.g.</u>, ECF

23 No. 5 at 12-14.)  In sum, even if the Court were to reach

24 Plaintiffs' breach of contract claim, it would be dismissed.

25 ///

26 ///

27 ///

28 ///

**(e)   Implied Covenant of Good Faith and Fair Dealing**

**(i)   Parties' Contentions**

Defendants assert that Plaintiffs are attempting to use California's implied covenant of good faith and fair dealing as a means to overturn the express terms of the contract.  (ECF No. 5 at 22).  Plaintiffs contend that by breaching the terms of the note, Defendants violated the covenant of good faith and fair dealing.

**(ii) Analysis**

Under California law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  <u>Marsu, B.V. v. Walt Disney Co.</u>, 185 F.3d 932, 937 (9th Cir. 1999)(internal quotation marks omitted).  The covenant of good faith and fair dealing requires "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  <u>Andrews v. Mobile Aire Estates</u>, 125 Cal. App. 4th 578, 589 (2005) (internal quotation marks omitted).  The covenant "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract."  <u>Racine & Laramie, Ltd. v. Dep't of Parks & Recreation</u>, 11 Cal. App. 4th 1026, 1032 (1992).

///

///

23

To the extent that Plaintiffs allege bad faith in the origination of the loan on Defendants' part, Plaintiffs' claim fails because "the implied covenant . . . does not require parties to negotiate in good faith prior to any agreement." McCain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2008). With respect to Defendants' alleged breach of the note's terms and failure to modify the note, Plaintiffs' claims fail for lack of sufficient factual support.  See Twombly, 550 U.S. at 555-56. Again, were the Court to reach this issue, it would dismiss this claim.

**II.   MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**[7]

Because the Court has dismissed Plaintiffs' FAC without leave to amend, Plaintiffs' motions for a Temporary Restraining Order ("TRO/PI") and an expedited hearing on same (ECF Nos. 20 and 25) are denied as moot.  However, even if the Court were to reach the merits of Plaintiffs' Motion for a TRO/PI, it would still deny the motion.

**A.   Standard**

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

---

[7] Defendants have not yet filed an Opposition to the Motions for TRO/PI and an expedited hearing.

1  injunction is in the public interest."

2  <u>Winter v. Natural Resources Defense Council</u>, 555 U.S. 7, 20

3  (2008); <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir.

4  2009) (quoting same).

5      Alternatively, under the so-called sliding scale approach,

6  as long as the Plaintiffs demonstrate the requisite likelihood of

7  irreparable harm and show that an injunction is in the public

8  interest, a preliminary injunction can still issue so long as

9  serious questions going to the merits are raised and the balance

10  of hardships tips sharply in Plaintiffs' favor.  <u>Alliance for</u>

11  <u>Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131-36 (9th Cir. 2011)

12  (concluding that the "serious questions" version of the sliding

13  scale test for preliminary injunctions remains viable after

14  <u>Winter</u>).

15

16      **B.   Plaintiffs' Contentions**

17

18      Plaintiffs generally contend that they have a likelihood of

19  success on the merits, that the unlawful detainer action/eviction

20  proceeding will cause them irreparable harm, and that the balance

21  of equities tip in their favor because the Defendants will not

22  suffer any serious hardship if the unlawful detainer

23  action/eviction is enjoined.  (<u>See</u> ECF Nos. 21-24.)

24  ///

25  ///

26  ///

27  ///

28  ///

1    **C.   Analysis**

2

3         Because the Court dismisses Plaintiffs' Complaint without

4    leave to amend on the basis that their claims are barred by

5    (1) judicial estoppel; (2) HOLA; and (3) they generally fail to

6    satisfy the pleading requirements under Rules 8(a) and 9(b) and

7    the cases interpreting those rules, the Court concludes that

8    Plaintiffs have little likelihood of success on the merits.

9    Although Plaintiffs raise various claims against Defendants, it

10   does not appear that any of these claims are meritorious.

11   Rather, it appears that Plaintiffs defaulted on their mortgage

12   and are now attempting to use the legal system in an effort to

13   delay or block the unlawful detainer/eviction action.  Because

14   such action appears to be within the legal rights of the

15   Defendants, the balance of hardships and equities tips sharply in

16   Defendants' favor.  Therefore, the Court concludes that under

17   either the <u>Natural Resources Defense Council</u> or <u>Cottrell</u>

18   standards for granting a TRO or PI, Plaintiffs' motion fails.

19

20                              **CONCLUSION**

21

22        As a matter of law, and for the reasons set forth above,

23   Defendants' Motion to Dismiss (ECF No. 5) and Request for

24   Judicial Notice (ECF No. 7) are GRANTED.  Defendants' Motion to

25   Strike (ECF No. 6) is DENIED as MOOT.

26   ///

27   ///

28   ///

1    Plaintiffs' Motion for Remand (ECF No. 9) is DENIED, Plaintiffs'

2    Motion for Untimely Filing of Opposition to Motion to Dismiss

3    (ECF No. 13) is GRANTED, and Plaintiffs' Motions for TRO/PI and a

4    For an Expedited Hearing on same (ECF Nos. 20 and 25) are DENIED

5    as MOOT. The Clerk of the Court is directed to close this case.

6         IT IS SO ORDERED.

7
     Dated: June 4, 2012

8

9                                          _____

10                                         MORRISON C. ENGLAND, JR.
                                           UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28